IN RE: REQUEST FOR JUDICIAL                    CASE NO.  2:19-mc-00016

ASSISTANCE FROM THE LOCAL COURT
IN BAD DURKHEIM, GERMANY
IN THE MATTER OF JW v. CHRISTOPHER HOGSETT
FOREIGN REF. NO.:  2F119/17

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION
FOR ORDER PURSUANT TO 28 U.S.C. § 1782(a)**

The United States of America, by and through counsel, submits this Memorandum of Law in support of the *Ex Parte* Application for Order,[1] pursuant to 28 U.S.C. § 1782(a), to execute a Letter of Request from authorities in Bad Durkheim, Germany for international judicial assistance to a DNA sample from Christopher Hogsett (Witness").

### INTRODUCTION

The request for international judicial assistance comes from the Local Court in Bad Durkheim, Germany. Specifically, the Court has issued a request seeking judicial assistance to

---

[1] *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("It is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45[(d)](3)."). *See also In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) ("Letters Rogatory are customarily received and appropriate action taken with respect thereto ex parte. The witnesses can and have raised objections and exercised their due process rights by motions to quash the subpoenas."); *In re Letter of Request from Supreme Ct. of Hong Kong*, 138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991); *In re Application of Masters for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 315 F. Supp. 3d 269, 272 (D.D.C. 2018); *In re Anglin*, No. 7:09cv5011, 2009 WL 4739481 (D. Neb. Dec. 4, 2009). Note, even though these applications are generally filed *ex parte*, they do not need to be filed under seal. *See, e.g.* Order denying Motion to Seal U.S.'s Application for *Ex Parte* Order Appointing Commissioner Pursuant to 28 U.S.C. § 1782, *In re Mutual Assistance of Local Court of Wetzlar, Germany*, 1:17-mc-00078-SKO, 2018 WL 306678 (E.D. Cal. Jan. 5, 2018).

obtain a DNA sample for use in the case captioned *JW v. Christopher Hogsett,* Foreign Reference Number Ref. No.:2F119/17. *See* Declaration of Assistant United States Attorney Brian E. Pawlak, Exhibits 1-3.

The facts of this case, as stated in the request, indicate that the matter is a civil proceeding in which the German Court is adjudicating the paternity of the identified child JW. According to information provided to the German Court, the mother of the child, Verena Winston first come into contact with Christopher Hogsett ("Witness") while she was residing in Lisle Illinois. On September 15, 2012, she met the Witness through an online dating site. At that time, the Witness was residing in Aurora, Illinois, which was about a twenty-minute drive from the Winston residence. The Witness informed Ms. Winstion that he was a single father and that Ms. Winston could not visit him at his residence. He however visited Ms. Winston at her residence approximately once a week until April of 2013. During that time period, Ms. Winston and the witness engaged in repeated episodes of sexual intercourse. On April 15, 2013, Ms. Winston learned she was pregnant and informed the Witness as much. The Witness denied to Ms. Winston that he was the father of her unborn child, claiming instead that he was incapable of fathering children. Soon thereafter, the Witness disappeared from Ms. Winston life. JW was born in 2014.

Ms. Winston conducted her own investigation and learned that the Witness was married and the father of three children. Through an online forum called "Psycho Dating," Ms. Winston met a woman who indicated she had also engaged in a sexual relationship with the Witness, which had resulted in that woman's pregnancy and the birth of child approximately two months prior to JW's birth. The Witness denied fathering that child the Witness's paternity for that child had to be established by court order.

2

Case 2:19-mc-00016-JPS   Filed 05/15/19   Page 2 of 11   Document 2

A review of records kept in the normal course of business by the United States Bankruptcy Court for Eastern District of Wisconsin indicate that Debtor Kristin Hogsett and Joint Debtor Christopher Hogsett, of 2295 S. Clubhouse Drive, Brookfield, Wisconsin filed for Chapter 13 Bankruptcy on July 19, 2016, in Case No. 16-27264. Pursuant to Thomson Reuters Legal CLEAR on line records, the Witness is married to Kristin. Those same records further indicate that the Witness had billing addresses in McHenry and Aurora Illinois during the relevant time period of 2012 to 2013, during which he is alleged to have engaged in sexual intercourse with Verena Winston which lead to her pregnancy and the birth of JW in 2014

A review of records kept in the normal course of business by the State of Wisconsin, in Waukesha County Case No. 2017 FA 532, *State of Wisconsin ex rel. vs. Christopher Hogsett*, filed on May 5, 2017, indicate that the Witness has been ordered to pay child support to Jennifer S. Cehrs.

Specifically, the German Court has requested that the identification form "Chain of Custody and Proof of Identity" provided by the German laboratory be completed and that the following evidence be procured from Christopher Hogsett: two buccal (i.e., saliva) swab samples; copies of identification documents, such as a passport or driver's license; a photograph; and a thumb print. Ex. 2.

The German Court's request was transmitted to the U.S. Department of Justice, Civil Division, Office of Foreign Litigation, Office of International Judicial Assistance in Washington D.C. pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555, 847 U.N.T.S. 12140 (hereinafter Hague Evidence Convention).

3

The request was then transmitted to the U.S. Attorney's Office for the Eastern District of Wisconsin for execution in accordance with 28 C.F.R. § 0.49(c). In order to execute these requests for international judicial assistance, authority must be obtained from this Court. 28 U.S.C. § 1782.

**ATTEMPTS TO OBTAIN THE REQUESTED INFORMATION**

AUSA Pawlak made telephonic contact with the witness on December 18, 2018. At that time, the witness agreed to recontact AUSA Pawlak to arrange for the necessary voluntarily DNA testing. The witness never reached out to AUSA Pawlak after that telephonic communication. AUSA Pawlak left an additional telephonic voice message for the witness on March 26, 2019, instructing him to follow through on his promise to contact AUSA Pawlak. A letter was delivered to the witness's address on April 23, 2019, by Federal Express, instructing him to contact AUSA Pawlak to give a voluntary DNA sample or a motion would be filed in the United States District Court for Eastern District of Wisconsin seeking a court order compelling his compliance pursuant to 28 U.S.C. § 1782

**ARGUMENT**

**I.     THE HAGUE EVIDENCE CONVENTION**

The Hague Evidence Convention affords each signatory nation the use of the judicial process of other signatory nations, where such assistance is needed in civil or commercial matters, "to facilitate the transmission and execution of Letters of Request and to further the accommodation of the different methods which they use for this purpose." Hague Evidence Convention pmbl. The Hague Evidence Convention "prescribes certain procedures by which a judicial authority in one contracting state may request evidence located in another contracting state." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 524 (1987). The Hague Evidence Convention is in force in both the United States

4

and Germany. Hague Conference on Private International Law, *Status Table for the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*, available at https://www.hcch.net/en/instruments/conventions/status-table/?cid=82. Last visited May 1, 2019 (The Hague Evidence Convention entered into force in Germany on April 27, 1979).

> Article 10 of the Hague Evidence Convention provides that:
>
> In executing a Letter of Request the requested authority shall apply the appropriate measures of compulsion in the instances and to the same extent as are provided by its internal law for the execution of orders issued by the authorities of its own country or of requests made by parties in internal proceedings.

Hague Evidence Convention, art. 10. Furthermore, Article 9 of the Hague Evidence Convention provides, in pertinent part, that: "the judicial authority which executes a Letter of Request shall apply its own law as to the methods and procedures to be followed, and that a 'Letter of Request shall be executed expeditiously.'" *Id*. art. 9.

Under Article VI of the United States Constitution, treaties, such as the Hague Evidence Convention, are the law of the land, on an equal footing with acts of Congress, and are binding on the courts. *See Bell v. Clark*, 437 F.2d 200, 203 (4th Cir. 1971). *See also Gandara v. Bennett*, 528 F.3d 823, 830 (11th Cir. 2008) (stating that self-executing treaties are "immediately and directly binding on state and federal courts pursuant to the Supremacy Clause.") (Roders, J., concurring); *Bishop v. Reno*, 210 F.3d 1295, 1299 (11th Cir. 2000) (concluding that "an Act of Congress" is on "full parity with a treaty.").

## II. STATUTORY CONSIDERATIONS WEIGH IN FAVOR OF GRANTING THE UNITED STATES' APPLICATION

The authority for this Court to assist foreign tribunals in obtaining documents is contained in 28 U.S.C. § 1782. This section states:

> <u>Assistance to foreign and international tribunals and to litigants before such tribunals</u>
>
> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a); s*ee also Aerospatiale*, 482 U.S. at 529 (providing a brief history of the Hague Evidence Convention). Section 1782 "is the product of congressional efforts, over the span of 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). By this law, Congress intended that the United States set an example to other nations by making judicial assistance generously available. *See, e.g., In re Request for Assistance from Ministry of Legal Affairs of Trin. & Tobago*, 848 F.2d 1151, 1153-54 (11th Cir. 1988). District courts have repeatedly appointed Department of Justice Attorneys to act as commissioners pursuant to this

provision for the purpose of rendering judicial assistance to foreign courts is response to an international request. *See, e.g., In re Letter Rogatory from the Nedenes District Court, Norway*, 2016 F.R.D. 277 (S.D.N.Y. 2003); *In re Letter of Request from the District of Rhein-Necker-Kreis, Amtsgericht Sinsheim, Germany; Matter of Curtiss Joseph Hika*, No. 10-60445-MC, 2010 WL 1655823 (S.D. Fla. Apr. 23, 2010); *In re Patricio Clerici,* 481 F.3d 1324, 1327 (11th Cir. 2007).

This Court is authorized to provide assistance to the German Court if the three requirements set forth in § 1782 are met. Those requirements are: "(1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *In re Request for Judicial Assistance from the Dist. Court in Svitavy, Czech*, 748 F. Supp. 2d 522, 525 (E.D. Va. 2010) (quoting *In re Microsoft Corp*., 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006)).

Here, each of these threshold statutory requirements is easily met. First, Christopher Hogsett "resides or is found in" the Eastern District of Wisconsin because the German request provides an address for Christopher Hogsett in Eastern District of Wisconsin and the AUSA confirmed Christopher Hogsett resides at 2295 S. Clubhouse Rd., in the City of New Berlin, in the County of Waukesha, State of Wisconsin which locality lies within the Eastern District of Wisconsin.. *See* Declaration of Assistant U.S. Attorney Brian E. Pawlak, Exhibit 2. Second, the request explains that the DNA sample and other information sought is "for use in a proceeding before a foreign tribunal," i.e., a paternity suit before the German Court. *Id*. Third, the request itself also reflects that it "is made by a foreign or international tribunal." *Id*. Thus, all of the statutory requirements for honoring the request for judicial assistance are satisfied.

## III. DISCRETIONARY CONSIDERATIONS WEIGH IN FAVOR OF GRANTING THE UNITED STATES' APPLICATION

Section 1782 "affords the district courts 'wide discretion' in responding to requests for assistance in proceedings before foreign tribunals." *Al Fayed v. United States*, 210 F.3d 421, 424 (4th Cir. 2000). The Supreme Court has set forth certain discretionary factors for a district court to consider before granting a request for judicial assistance:

> (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign entity to judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the requested information is unduly intrusive or burdensome.

*In re Svitavy*, 748 F. Supp. 2d at 525 (citing *Intel Corp.*, 542 U.S. at 264). "In exercising its discretion under § 1782, the district court should be guided by the statute's twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Al Fayed*, 210 F.3d at 424; *see also United States v. Morris (In re Letter of Request from Amtsgericht Ingolstadt, Fed. Republic of Ger.)*, 82 F.3d 590, 592 (4th Cir. 1996) ("Plainly, the . . . statute envision[s] considerable cooperation with foreign courts' requests for assistance and a general practice of reciprocity."). Here again, each of these discretionary factors weighs in favor of assisting the German Court.

With respect to the first factor, "although this factor was originally expressed as a 'participant' versus 'nonparticipant' analysis under the facts presented in *Intel*, the true question at hand is whether the requested discovery is available to the foreign tribunal without the assistance of this Court." *In re Svitavy*, 748 F. Supp. 2d at 526; see also *Intel*, 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional

8

reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."). In other words, it is of no matter that Christopher Hogsett is a party to the proceedings before the German Court; his residence in the United States counsels in favor of assisting the German Court with obtaining the requested evidence as he is not subject to the German Court's jurisdiction. Thus the first factor weighs in favor of granting the motion.

Second, there is nothing in the request to suggest that this Court should decline to grant the Application based on the nature of the German Court or the character of the proceedings. Additionally, this request was initiated by the German Court and not by an independent party; therefore, the German Court is clearly receptive to the assistance of this Court and the second factor weighs in favor of granting the motion. *See In re Svitavy*, 748 F. Supp. 2d at 527 (Granting a 1782 application in response to a request for a DNA sample sent from a Czech Court). *See also In re Amtsgericht Ingolstadt*, 82 F.3d at 591 (affirming the district court's order directing the putative father to provide a blood sample for use in a paternity suit pending in Germany).

With respect to the third factor, because the requester is the German Court, there is sufficient assurance that the request for judicial assistance is not an attempt to circumvent German discovery rules or to thwart policies of either the United States or Germany. *See In re Svitavy*, 748 F. Supp. 2d at 529 ("[T]he fact that the request was initiated by the *Svitavy* Court itself, rather than a private litigant, provides sufficient assurance that the request does not attempt to circumvent Czech discovery rules or Czech policy."). Therefore, the third *Intel* factor weighs in favor of granting the German Court's request for judicial assistance.

And with respect to the fourth factor, the submission to a buccal swab and providing other supporting information would not be unduly intrusive or burdensome. "This is a simple request for the production of evidence that is routinely provided in support of paternity actions

9

abroad . . . ." *Id*. In fact, "provid[ing] a DNA sample by buccal swab is a method substantially less invasive than the oft-approved production of a blood sample." *Id*. Accordingly, courts across the United States have consistently granted foreign judicial requests for blood samples or buccal swabs in paternity cases like the one here. *See, e.g., In re Letter of Request from Local Court of Pforzheim*, 130 F.R.D. 363, 366 (W.D. Mich. 1989) ("[T]he requirement of providing a blood sample in a paternity action is a routine one."); s*ee also In re Amtsgericht Ingolstadt*, 82 F.3d 590; *In re Nedenes*, 216 F.R.D. 277; *In re Letter of Request from Boras District Court*, 153 F.R.D. 31 (E.D.N.Y. 1994); *In re Letter Rogatory from Local Court of Ludwigsburg*, 154 F.R.D. 196 (N.D. Ill. 1994).

In summary, consideration of the four discretionary factors set forth by the Supreme Court in *Intel* favors authorizing judicial assistance to the German Court.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court grant its Application for an Order pursuant to 28 U.S.C. § 1782(a): (1) appointing Brian E. Pawlak, Assistant United States Attorney, Commissioner and authorizing him to take the actions necessary, including the issuance of a subpoena, to secure evidence from Christopher Hogsett for use in a paternity proceeding before the Local Court in Bad Durkeim, Germany; (2) authorizing the United States Marshals Service as the entity responsible for serving Christopher Hogsett. and (3) authorizing the United States Marshals Service as the entity responsible for obtaining the DNA sample and other identification requirements from Christopher Hogsett.

        Respectfully submitted,

        MATTHEW D. KRUEGER
        United States Attorney

    By: /s/ Brian E. Pawlak

BRIAN E. PAWLAK<br>
Assistant United States Attorney<br>
Attorneys for Defendant<br>
State Bar Number 1009916<br>
517 East Wisconsin Avenue, Room 530<br>
Milwaukee, Wisconsin 53202<br>
Telephone:  (414) 297-4134<br>
Facsimile: (414) 297-4394<br>
Brian.pawlak@usdoj.gov